IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:24-CT-3212-M-RJ

| | |
|---|---|
| TYRONE D. GLADDEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| KEVIN MONROE, et al., ) | |
| ) | |
| Defendants. ) | |

This cause is before the court on defendants' motions for summary judgment and to seal documents. See [D.E. 34, 39]. For the reasons discussed below, the court grants these motions.

## Relevant Procedural History:

On September 5, 2024, Tyrone D. Gladden ("plaintiff"), a state inmate proceeding without prepayment of fees, filed *pro se* a complaint under 42 U.S.C. § 1983. [D.E. 1, 2, 7].

On April 9, 2025, the court: granted plaintiff's motion to amend [D.E. 8], conducted its initial review of the amended complaint, and allowed the action to proceed in part against Kevin Monroe and Stephanie Greene ("defendants") as to plaintiff's First Amendment retaliation claim – that he was transferred from Maury C.I. to Tabor C.I. in retaliation for pursuing a grievance concerning defendants' profanity use, but dismissed other claims. See Order [D.E. 9].

On June 25, 2025, the court, *inter alia*, denied plaintiff's motion to appoint counsel but granted his motion to amend the operative complaint to reflect corrected dates. Order [D.E. 15].

On October 23, 2025, plaintiff moved to compel discovery. Mot. [D.E. 23].

On December 3, 2025, the court denied the motion to compel. See Order [D.E. 29].

On December 22, 2025, defendants moved for summary judgment, Mot. [D.E. 34], and filed a memorandum in support [D.E. 35], a statement of facts [D.E. 36], an appendix [D.E. 37], proposed sealed documents [D.E. 38], a motion to seal these documents, Mot. [D.E. 39], and an amended appendix [D.E. 40]. Defendants later filed an amended memorandum [D.E. 42].

Pursuant to Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam) ("Roseboro"), the court notified plaintiff about the motion for summary judgment, the response deadline, and the consequences of failing to respond. [D.E. 41].

Although he moved for, and was granted, an extension of time to file his response, see Mot. [D.E. 43]; Order [D.E. 44], plaintiff failed to file a response and the time to do so has passed.

### Defendants' Motion to Seal:

The proposed sealed exhibit entails plaintiff's medical records [D.E. 38]. Plaintiff has not objected and, after review under the governing standard, see Doe v. Public Citizen, 749 F.3d 246, 271–73 (4th Cir. 2014), the court finds that the interest in preserving confidentiality in these records outweighs the public interest in disclosure and thus GRANTS the motion to seal [D.E. 39].

### Defendants' Motion for Summary Judgment:

1) Statement of Facts:

Because plaintiff has not submitted an opposing statement of facts, defendants' undisputed statement of facts is deemed admitted for the purposes of defendants' motion for summary judgment. See Fed. R. Civ. P. 56(e)(2); E.D.N.C. Local Civ. R. 56.1(a)(2); Felton v. Moneysworth Linen Serv., Inc., 295 F. Supp. 3d 595, 597 n.1 (E.D.N.C. 2018); see also Howard v. Coll. of the Albemarle, 262 F. Supp. 3d 322, 329 n.1 (E.D.N.C. 2017), aff'd, 697 F. App'x 257 (4th Cir 2017) (per curiam) (unpublished). Defendants' statement of facts cites the underlying evidence, and the court has reviewed that evidence.

2

Defendants state, *inter alia*, that: on June 13, 2023, plaintiff was transferred from Alexander C.I. to Maury C.I.; "When Plaintiff arrived at Maury, he was a medium custody offender"; "As a medium custody offender, the proper housing assignment for him was Maury's Tan Unit"; "However, as part of the standard intake procedure an offender must be assessed by medical before they can be fully received by the prison facility"; "When Plaintiff was evaluated by medical staff, his medical acuity status was raised to 2A"; because "Maury's Tan Unit was not 2A compatible," "before completing his intake process, Vedica Lawson-Washington, the acting Classification Coordinator at Maury, initiated Plaintiff's transfer to a facility capable of properly accommodating him based on his custody classification and medical needs"; "Once Plaintiff's transfer action was initiated on June 13, 2023, he was backlogged until the appropriate facility could receive him"; "plaintiff was transferred to Tabor on October 27, 2023"; "After Plaintiff was transferred to Tabor, their medical staff changed his acuity status to 2B"; defendants in this action "were not present during Plaintiff's intake," are not medical staff at Maury, and "did not assist Lawson-Washington with Plaintiff's transfer action"; plaintiff did not file an administrative grievance at Maury until August 9, 2023; "Housing Unit Managers are not authorized to initiate an offender's transfer to or from a prison facility"; and defendants, as Housing Unit Managers, did not have the institutional authority to initiate a transfer. See Defs.' Stmt. Mat. Facts. [D.E. 36].

2) <u>Legal Standard</u>:

Summary judgment is appropriate when, after reviewing the record as a whole, the court determines that no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247–48 (1986). The party seeking summary judgment must initially demonstrate the absence of a genuine issue of material fact or the absence of evidence to support the nonmoving party's case.

3

Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis and quotation omitted). A court reviewing a motion for summary judgment should determine if a genuine issue of material fact exists for trial. Anderson, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007).

3) Discussion:

As an initial matter, although plaintiff raises official capacity claims against defendants, these claims are dismissed without prejudice as barred by the Eleventh Amendment because North Carolina has not waived immunity. See Will v. Michigan Dep't of State Police, 491 U.S. 58, 66, 71 (1989). Thus, defendants are entitled to summary judgment on plaintiff's official capacity claims. See Anderson, 477 U.S. at 249.

Next, to succeed on his First Amendment retaliation claim, plaintiff must show that: 1) he engaged in protected First Amendment activity; 2) defendants took action that adversely affected that protected activity; and 3) a causal relationship exists between the protected activity and defendants' conduct. Martin v. Duffy, 858 F.3d 239, 249 (4th Cir. 2017) ("Martin I"), cert. denied, 138 S. Ct. 738 (2018); Booker v. S.C. Dep't of Corr., 855 F.3d 533, 537 (4th Cir. 2017), cert. denied, 138 S. Ct. 755 (2018).

Regarding the first element, filing prison grievances is a protected activity. Jones v. Solomon, 90 F.4th 198, 213 (4th Cir. 2024); Martin v. Duffy, 977 F.3d 294, 299 (4th Cir. 2020) ("Martin II"); Martin I, 858 F.3d at 249; Booker, 855 F.3d at 544.

4

As to the second element, "a plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter 'a person of ordinary firmness' from the exercise of First Amendment rights." Constantine v. Rectors & Visitors of George Mason Univ., 411 F.3d 474, 500 (4th Cir. 2005) (citations omitted).

As to the third element, courts apply the "same-decision test" in prisoner First Amendment retaliation claims. See Martin II, 977 F.3d at 299 (citation omitted). Under this framework, once plaintiff shows his "protected conduct was a substantial or motivating factor" for the adverse action, the burden shifts to defendants to prove a permissible basis for this action. Id. at 300.

Declarations in support of defendants' motion for summary judgment reflect that plaintiff's prison transfer was initiated due to his June 13, 2023, medical acuity status but defendants were not involved in this transfer decision. See Defs.' Am. App., Ex. 2, Lawson-Washington Decl. [D.E. 40-11] (declaring, *inter alia*, that: Lawson-Washington was the assisting Classification Coordinator who assigned arriving offenders to appropriate housing units at Maury C.I.; plaintiff transferred to Maury C.I. on June 13, 2023; as a medium custody offender, plaintiff's proper housing assignment would have been the Maury C.I. Tan Unit; before being fully received by the prison facility, offenders are assessed by medical as part of standard intake procedure; when he was assessed, medical heightened plaintiff's medical acuity status to 2A; because Maury C.I. Tan Unit was not equipped to handle 2A acuity status, on the day plaintiff arrived, Lawson-Washington "initiated his transfer action to a facility capable of appropriately housing plaintiff based on his custody classification and medical need"; once this transfer action was initiated, plaintiff was placed on a transfer backlog "until the appropriate facility could receive him"; plaintiff was transferred to Tabor C.I. on October 27, 2023; and defendants did not assist Lawson-Washington in plaintiff's transfer action); id., Ex. 3, Greene Decl. [D.E. 40-12] (declaring, *inter alia*, that:

5

Greene then was a Maury C.I. Housing Unit Manager and was not authorized to initiate a prison transfer; Greene did not initiate, influence, or assist Lawson-Washington in plaintiff's transfer action; Greene did not encounter plaintiff until he was in the Tan Unit; Greene did not retaliate against plaintiff; Greene did not engage in prohibited conduct when interacting with plaintiff, or observe defendant Monroe doing so; plaintiff is just another inmate to Greene; and Greene did not, and does not, hold ill will toward, or want to harm, plaintiff); id., Ex. 4, Monroe Decl. (declaring, *inter alia*, that: Monroe then was a Maury C.I. Housing Unit Manager and was not authorized to initiate a prison transfer; Monroe did not initiate, influence, or assist Lawson-Washington in plaintiff's transfer action; Monroe did not encounter plaintiff until he was in the Tan Unit; Monroe did not retaliate against plaintiff; Monroe did not engage in prohibited conduct when interacting with plaintiff, or observe defendant Greene doing so; plaintiff is just another inmate to Monroe; and Monroe did not, and does not, hold ill will toward, or want to harm, plaintiff).

The record supports defendants' statement and declarations. See id., Ex. 1D [D.E. 40-5] at 1 (Offender's Transfer Action reflecting, *inter alia*: as "backlog or requested date," June 14, 2023; as "assignment type," reassignment; as "transfer reason," "acuity change"; as "sending facility," Maury C.I.; as "target date for move," June 15, 2023; as "authority," Vadica M. Lawson-Washington; as "transfer comment," "MED/2A/INCOMP W/ Tan [sic]"; as "receiving facility," Tabor C.I.; and, as "transfer date," Oct. 27, 2023); id., Ex. 1B (Offender Information Screen printout showing, *inter alia*, plaintiff's June 13, 2023, transfer from Alexander C.I. to Maury C.I., and Oct. 27, 2023, transfer from Maury C.I. to Tabor C.I.); id., Ex. 1H (plaintiff's self-dated Aug. 8, 2023, Maury C.I. grievance seeking canteen item replacement); id., Ex. 1I (Correspondence Tracking System printout showing, *inter alia*, plaintiff's initial Maury C.I. grievance was received Aug. 10, 2023, and concerned canteen item replacement); see also Defs.' App., Ex. E [D.E. 38-1]

6

at 663–68 (June 13, 2023, Maury C.I. health screening assigning plaintiff Level 2A acuity); id. at 657–63 (Oct. 27, 2023, Tabor C.I. health screening assigning plaintiff Level 2B acuity).

By contrast, plaintiff has not offered affidavits, declarations, or other competent summary judgment evidence in opposition to defendants' motion for summary judgment, despite receiving adequate notice pursuant to Roseboro and having an opportunity to do so; instead, he merely relies upon the allegations in his unverified complaint. See Celotex, 477 U.S. at 324; cf. Pledger v. Lynch, 5 F.4th 511, 525–27 (4th Cir. 2021); Goodman v. Diggs, 986 F.3d 493, 498 (4th Cir. 2021).

In short, because plaintiff fails to satisfy his initial burden to show his "protected conduct" – filing a prison grievance – "was a substantial or motivating factor" in defendants' alleged "decision to take adverse action" – initiating a prison transfer – the court need not apply the burden-shifting framework of the "same-decision test." Cf. Martin II, 977 F.3d at 300; accord Taylor v. Manis, No. 7:20-CV-00121, 2021 WL 519903, at *5 (W.D. Va. Feb. 11, 2021) (finding conclusory retaliation claim failed to satisfy plaintiff's "initial burden to show that his 'protected conduct was a substantial or motivating factor in a prison guard's decision to take adverse action.'" (quoting Martin II, 977 F.3d at 300)), aff'd, No. 21-6418, 2022 WL 4534270 (4th Cir. Sept. 28, 2022).

Viewing the record evidence and reasonable inferences drawn therefrom in the light most favorable to plaintiff, Scott, 550 U.S. at 378, defendants have shown, at minimum, the absence of evidence regarding the "causation element" for plaintiff's lone surviving First Amendment retaliation claim, Celotex, 477 U.S. at 325; see Raub v. Campbell, 785 F.3d 876, 885 (4th Cir. 2015) (requiring a "rigorous" but-for standard for the causation element), but plaintiff merely rests upon the allegations in his complaint, cf. Anderson, 477 U.S. at 248–49, and fails to "come forward with specific facts showing that there is a genuine issue for trial," Matsushita, 475 U.S. at 587. Accordingly, defendants are entitled to summary judgment. Anderson, 477 U.S. at 249.

7

Alternatively, as government officials, defendants are entitled to qualified immunity from civil damages when either 1) the plaintiff has not demonstrated a violation of a constitutional right, or 2) the court concludes that the right at issue was not clearly established at the time of the official's alleged misconduct. Pearson v. Callahan, 555 U.S. 223, 236 (2009); see Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011) (alterations and quotations omitted).

Here, because the facts taken in the light most favorable to plaintiff do not show that defendants violated his constitutional rights, defendants also are entitled to qualified immunity. Tolan v. Cotton, 572 U.S. 650, 655–56 (2014); see al-Kidd at 563 U.S. 743 ("When properly applied, [qualified immunity] protects 'all but the plainly incompetent or those who knowingly violate the law.'" (citation omitted)); Malley v. Briggs, 475 U.S. 335, 341 (1986) ("The *Harlow* standard is specifically designed to . . . permit the resolution of many insubstantial claims on summary judgment . . . .'").

### Conclusion:

For the reasons discussed above, the court: GRANTS defendants' motion to seal [D.E. 39]; DIRECTS the clerk to seal the docket entry at [D.E. 38]; GRANTS defendants' motion for summary judgment [D.E. 34]; and DIRECTS the clerk to close the case.

SO ORDERED this 4th day of February, 2026.

Richard E. Myers II
RICHARD E. MYERS II
Chief United States District Judge